IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| VANESSA C. WIGAND, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 3:07CV440-HEH |
| | ) |
| COSTECH TECHNOLOGIES, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
### (Granting Defendants' Motions to Dismiss )

This is a copyright infringement action coupled with multiple state law claims. It is before the Court on motions to dismiss filed by each defendant. Defendants Costech Technologies, Inc. ("Costech"), Peter Raglione, and Paul Skulmoski filed a Motion to Dismiss pursuant to Rule 12(b)(6) on October 5, 2007. Defendants Duffey Agency, Inc. ("Duffey Agency") and Thomas Langdon filed a Motion to Dismiss pursuant to Rules 12(b)(2) and 12(b)(6) on October 5, 2007, as did Defendant Clifford Letovsky. All parties have submitted memoranda of law in support of their positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process.

For the reasons stated herein, the Court will dismiss Defendants Duffey Agency and Thomas Langdon from the suit entirely because the Court lacks personal jurisdiction.

The Court will further dismiss Counts II, III, IV, V, VI, VII, VIII, and IX in their entirety because those counts do not state claims for which relief could be granted. The remnants of this civil action are the copyright claim contained in Count I which shall proceed against Costech, Raglione, and Skulmoski.

## I. Background

Vanessa C. Wigand and the Virginia Association of Driver Education and Traffic Safety ("VADETS") are Plaintiffs in this matter. Wigand is an employee of the Virginia Department of Education and a citizen of Virginia. In 2000, she helped revise the *Curriculum and Administrative Guide for Driver Education in Virginia* ("*Curriculum*"). Costech was contracted by the Department of Education to help format the *Curriculum*, design layouts, and edit graphics. Costech's contract specifically barred the company from using *Curriculum* materials for any purpose not related to performance of the contract without prior written consent from the Department of Education.

Wigand wrote a book in 2001 that aligned with the topic modules in the *Curriculum* and created a corresponding online course as well. These endeavors were purportedly not for profit, were outside the scope of her employment with the Department of Education, and were undertaken for the sole benefit of student drivers in Virginia. In October 2001, Wigand licensed her materials to VADETS for the limited purpose of delivering an online driver education course to students in the Commonwealth.[1] The

---

[1] The Virginia Department of Education granted a formal written license to VADETS in October 2006. The Department does not appear to have objected at any point to the use of the

2

license was granted with the understanding that any proceeds would be utilized to promote driver education in Virginia.

VADETS contracted Costech in September 2002 to manage the delivery of the online course to students. Under the agreement, VADETS provided the educational materials to Costech, which then integrated the content into an internet-based system. Costech then licensed the system back to VADETS, maintained the server, and provided training to VADETS. Approximately 2,500 Virginia students take the VADETS online course through the VADETS web site each year.

The Complaint states that Costech promised in September 2002 that the "finished product would be easy to navigate and user-friendly." The exact context of Costech's alleged statement is not included in the pleadings, but Plaintiffs utilize this assurance as grounds for much of their Complaint. VADETS maintains that the online course created by Costech was not user-friendly and that it required constant monitoring to ensure that students navigated the course successfully. VADETS claims to have repeatedly requested that Costech fix problems with the course's usability.

Plaintiffs allege that Costech misappropriated VADETS's online course in 2003 and began selling it to third parties in North Carolina under the name of Costech's Internet Driver Education Software. Costech reportedly sells this online course to at least eight North Carolina school districts and receives income from those sales of $150,000 to

---

derivative materials by Wigand or VADETS.

$300,000 annually.

In July 2006, Wigand was approached by Georgia officials about creating an online driver education course similar to the one she created in Virginia. She updated her materials for use in Georgia and hired Costech again to facilitate the online distribution of the course. In August 2006, Wigand learned Costech had been selling an online driver education course to students in North Carolina for four years, which she alleges contained misappropriated material. Plaintiffs believe that Costech copied the VADETS Online Course Workbook, reprinted it under Costech's name, obtained a copyright for it under the name of Defendant Skulmoski, and sold it as a classroom activity book in North Carolina. Costech claims that Wigand authorized the adaptation of materials for use in North Carolina.

After confronting Costech about the alleged misappropriation of the online course and workbook, Wigand obtained a federal copyright of the materials in September 2006. Wigand and VADETS have been unable to resolve their dispute with Costech and have terminated their relationship with the company. They allege that Costech continues to unlawfully market the VADETS Online Course in Georgia; Costech denies that allegation.

Wigand and VADETS filed a Complaint containing nine counts on July 26, 2007. Eight defendants were named in the Complaint. Costech was named along with Costech officers Raglione, Skulmoski, and Letovsky. Plaintiffs also named as Defendants Jordan

4

Driving School, a driving school in North Carolina, along with proprietor Lorraine Jordan Langdon. Lorraine Jordan Langdon's husband, Thomas Langdon, an educational consultant, and his company, Duffey Agency, were also joined as defendants in Plaintiffs' Complaint because they assisted Costech with marketing and distribution of the driver education program in North Carolina.

Count I alleges that Wigand's materials are protected derivative work from the Virginia Department of Education's *Standards of Learning* and that Defendants Costech, Skulmoski, and Raglione infringed Wigand's copyright, in violation of 17 U.S.C. § 101 *et seq.*, by reproducing, distributing, and displaying the materials online and in print. The validity of the copyright infringement claim contained in Count I is not contested in any of the motions to dismiss currently before the Court.

Counts II through IX demand compensation for an assortment of statutory and common law claims under Virginia law. Count II seeks damages from all Defendants for tortious interference with prospective economic gain and/or business expectancy under Virginia common law. Count III accuses all Defendants of conspiracy to injure in reputation, trade, and business, under Va. Code Ann. § 18.2-499 *et seq.* Count IV seeks damages from Defendants for common law fraud.

Counts V through VIII contain claims against Costech, Raglione, and Skulmoski only. Count V accuses those Defendants of breach of contract. Count VI claims a breach of express warranty under the Virginia Uniform Computer Information Transactions Act

5

(UCITA), Va. Code Ann. § 59.1-501.1 *et seq.* Count VII claims a breach of implied warranty of fitness for licensee's particular purpose under UCITA, and Count VIII claims a breach of implied warranty of merchantability under UCITA. Count IX of Plaintiffs' Complaint alleges a violation of the Virginia Consumer Protection Act, Va. Code. Ann. § 59.1-198 *et seq.*, against all Defendants.[2]

Jordan Driving School and Lorraine Jordan Langdon reached a settlement with Plaintiffs and were dismissed by separate Order. The remaining six Defendants have filed motions to dismiss. Thomas Langdon and Duffey Agency have moved for dismissal based on a lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. They claim alternatively, pursuant to Rule 12(b)(6), that Plaintiffs have failed to state a claim against them in Counts II, III, IV, and IX. Costech, Raglione, Skulmoski, and Letovsky move for dismissal of Counts II through IX under Rule 12(b)(6). Letovsky also moves, alternatively, for dismissal due to lack of personal jurisdiction. For the reasons discussed below, the Court will grant the defendants' motions to dismiss on various grounds.

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or

---

[2]The Complaint does not specify which claims are directed at which Defendants but simply uses the term "Defendants." The Court has relied upon Plaintiffs' briefs in opposition to piece together which Defendants were named in specific counts.

the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952

(4th Cir. 1992). Generally, dismissals under Rule 12(b)(6) are disfavored by the courts

because of their res judicata effect. *Fayetteville Investors v. Commercial Builders, Inc.*,

936 F.2d 1462, 1471 (4th Cir. 1991). A complaint need only have "a short and plain

statement of the claim showing that the pleader is entitled to relief, in order to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*

*Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (internal quotation marks

omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief

above the speculative level." *Id.* at 1965. In considering a motion to dismiss under Rule

12(b)(6), the Court "must assume that the allegations of the complaint are true and

construe them in the light most favorable to the plaintiff." *Martin*, 980 F.2d at 952.

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears

the burden of proving the grounds for jurisdiction by a preponderance of the evidence.

*Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). When a district court

decides the issue without an evidentiary hearing, however, plaintiffs need only make a

*prima facie* showing of personal jurisdiction. *Combs v. Bakker*, 886 F.2d 673, 676 (4th

Cir. 1989). In determining whether jurisdiction is appropriate, the Court resolves all

factual disputes and draws all inferences in favor of the plaintiff. *See Mylan Labs.*, 2 F.3d

at 60.

### III. Analysis

**A.     The Court Lacks Personal Jurisdiction over Thomas Langdon and Duffey Agency**

Thomas Langdon is a former superintendent of schools in North Carolina. After leaving public school administration, Thomas Langdon founded Duffey Agency approximately ten years ago to provide consulting on educational matters. These two defendants collaborated with Costech in the late 1990's to market computer-based driver education software in North Carolina. It was this business relationship with Costech that led Thomas Langdon and Duffey Agency to be named as Defendants in this action. Defendants believe that they are named in this case through innocent mistake or inadequate investigation and that they should be dismissed for lack of personal jurisdiction, or alternatively, they should be dismissed from Counts II, III, and IV because Plaintiffs have failed to state a claim as a matter of law.

Wigand and VADETS bear the burden of showing by a preponderance of the evidence that personal jurisdiction lies in the Eastern District of Virginia. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 175-76 (4th Cir. 2002). While showing a sufficient jurisdictional basis falls squarely on the Plaintiffs' shoulders, the Court must construe all relevant factual allegations in the light most favorable to the plaintiff and "draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

Evaluating a challenge to personal jurisdiction in this district involves a familiar

8

two-step inquiry. The Court must first determine whether the Commonwealth's long-arm statute authorizes personal jurisdiction. If so, the Court ascertains whether extending personal jurisdiction over the defendants under the circumstances in this case would be at odds with the Constitution. *See, e.g., Christian Sci. Bd. of Dir. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Duffey Agency and Thomas Langdon contend that their presence in a Virginia forum is not authorized by the Virginia long-arm statute and is repugnant to the due process requirements of the Constitution.

Plaintiffs' Complaint states that "Defendants are subject to personal jurisdiction in Virginia pursuant to Code of Virginia § 8.01-328.1" because they (1) transacted business in the Commonwealth, and/or (2) contracted to supply services or things in the Commonwealth, and/or (3) caused tortious injury by an act or omission in the Commonwealth, and/or (4) caused tortious injury in the Commonwealth by an act or omission outside the Commonwealth if they regularly do or solicit business, or engage in any other persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in the Commonwealth. Plaintiffs capably recite the applicable portion of the Virginia long-arm statute but offer no factual support for their conclusory statement. Indeed, it would be difficult for Wigand and VADETS to offer factual support because none of Duffey Agency and Thomas Langdon's alleged activities satisfy the geographic requirements of the Virginia long-arm statute.

The affidavit submitted by Duffey Agency and Thomas Langdon show that they

9

have not conducted business in the Commonwealth nor have they contracted to supply services or goods in the Commonwealth. Duffey Agency has never had a business office, agent, telephone listing, or mailing address in the Commonwealth. Duffey Agency appears to have no contacts at all with Virginia, and Thomas Langdon's only contact with the Commonwealth is two trips to Richmond in 2000.

Plaintiffs assert, and Defendants admit, that Thomas Langdon accompanied Costech representatives to Richmond on two occasions in 2000. These visits are Defendants' only contact with the forum state and they significantly predate the contracts and materials at issue in this litigation. To serve as the basis for jurisdiction, the "activities that support the jurisdictional claim must coincide with those that form the basis of the plaintiff's substantive claim." *City of Va. Beach v. Roanoke River Basin Ass'n*, 776 F.2d 484, 487 (4th Cir. 1985). The two visits in 2000 are not enough to support a finding that Thomas Langdon and Duffey Agency conducted sufficient business in the Commonwealth to be subject to the Court's jurisdiction.

The two remaining theories that could provide personal jurisdiction over Duffey Agency and Thomas Langdon under the Virginia long-arm statute are by causing tortious injury by an act or omission in the Commonwealth, or causing tortious injury in the Commonwealth by an act or omission outside the Commonwealth. Since the Complaint fails to allege *any* act committed by the defendants in the Commonwealth beyond the two unrelated visits to Richmond in 2000, the Court must determine whether acts committed

10

outside the Commonwealth subject these parties to jurisdiction.

Personal jurisdiction under the long-arm statute for tortious injury in the Commonwealth caused by acts or omissions outside of the Commonwealth is only permissible when a defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Va. Code Ann. § 8.01-328.1. Based on the affidavit submitted by the defendants, there is no factual basis to conclude that these two Defendants engage in any regular or persistent conduct within the Commonwealth or receive any revenue tied to the Commonwealth.

Thomas Langdon and Duffey Agency's affidavit states that neither does business in Virginia; neither owns or leases real or personal property in Virginia; neither sells, markets, or advertises goods or services in Virginia; neither have sold, distributed, licensed, or leased any products or services to persons or places in Virginia; neither have entered into or solicited any contracts with persons in Virginia; and neither have derived revenue from goods or services sold in Virginia. Plaintiffs' conclusory assertion of jurisdiction is not sufficient given the affidavit provided by Thomas Langdon and Duffey Agency. Even assuming *arguendo* that Defendants' gossamer contacts somehow satisfied the Virginia long-arm statute, they would undoubtedly fall short of the constitutional mark.

Perhaps recognizing that personal jurisdiction over these defendants is tenuous,

11

Plaintiffs offer an alternative theory. Wigand and VADETS believe that *Lolavar v. Santibanes*, 430 F.3d 221 (4th Cir. 2005), would permit this Court to assert personal jurisdiction over Duffey Agency and Thomas Langdon based not on their contacts with the Commonwealth, but because they conspired with individuals, namely Costech, who are properly before this tribunal. The Fourth Circuit has endorsed the "theory of obtaining personal jurisdiction by the showing of a conspiracy so that a conspirator not present in the forum State will, nevertheless, be adjudged to have had a personal presence in the forum State by means of adequate minimum contacts of the other conspirators therein." *Lolavar*, 430 F.3d at 229.[3]

Wigand and VADETS's attempt to argue that personal jurisdiction lies through the conspiracy, based on their interpretation of *Lolavar*, is unavailing for two reasons. The first is that each count in the Complaint must satisfy the Virginia long-arm statute in its own right. That is to say that "each count must have independent jurisdictional

---

[3]It is somewhat unclear from *Lolavar* and *McLaughlin v. McPhail*, 707 F.2d 800 (4th Cir. 1983), whether the existence of a conspiracy and the presence of a co-conspirator within the personal jurisdiction of the forum extends the bounds of due process as well as the limits of the Virginia long-arm statute, or due process alone.

   *Lolavar* states that in "various cases on this subject, some . . . may have turned on the failure or success in complying with a long-arm or like statute. But however phrased, the *McLaughlin* case and the *First Chicago* case are both decided on the lack of personal jurisdiction, which is the issue here, not whether or not service of process was sufficient." 430 F.3d at 230. It appears that proving a defendant conspired with an in-state actor may alleviate some of the burdens placed on a plaintiff by the due process clause, but it brings the plaintiff no closer to satisfying the Virginia long-arm statute.

   Since these defendants contend that both the long-arm statute and due process prevent their presence in this forum, even a viable conspiracy claim might not authorize personal jurisdiction.

moorings." *Idefense Inc. v. Dick Tracy Group*, 58 Va. Cir. 138, 140 (Va. Cir. Ct. 2002) (Hudson, J.) (citing *Krantz v. Air Line Pilots Ass'n, Int'l, et al.*, 245 Va. 202, 427 S.E.2d 326 (1993)). Wigand and VADETS allege in Count III that all Defendants in this action conspired to injure them in reputation, trade, and business under Va. Code § 18.2-499 *et seq*. A conspiracy is not implicated in the other counts in which these two Defendants are named. Wigand and VADETS might, at best, use the conspiracy only to justify personal jurisdiction over Duffey Agency and Thomas Langdon for the purposes of Count III. This theory of personal jurisdiction would not provide Plaintiffs with a safe harbor for the entire Complaint.

Plaintiffs face an additional hurdle that precludes use of their conspiracy theory of jurisdiction on Count III. To prevail, they must "make a threshold showing that a conspiracy existed and that the defendants participated therein" in order to extend personal jurisdiction by way of the conspiracy. *McLaughlin*, 707 F.2d at 806. For reasons explained later in this opinion, Plaintiffs have failed to state a viable claim in Count III. Therefore, Plaintiffs are precluded from using a conspiracy theory to extend personal jurisdiction over these Defendants.

The Court concludes that there is no factual or legal basis to exercise personal jurisdiction over Duffey Agency and Thomas Langdon under the Virginia long-arm statute. The Court therefore need not reach the due process component of the jurisdictional analysis and these two defendants will be dismissed. *Christian Sci. Bd. of*

13

*Dir.*, 259 F.3d at 215.

**B.    The Court Has Personal Jurisdiction over Letovsky**

The Court believes, after considering all relevant allegations in the light most favorable to the Plaintiffs and drawing all reasonable inferences in favor of jurisdiction, that Plaintiffs have met their burden of demonstrating a *prima facie* case of personal jurisdiction over Letovsky. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Most notably, Letovsky's affidavit states that he is a vice president of Costech, "a sounding board and advisor" to company officers, and that he assists in the drafting of contracts and correspondence for the company. The Court will consider Defendant Letovsky's motion to dismiss under Rule 12(b)(6) below.

**C.    Tortious Interference (Count II)**

Count II of Plaintiffs' Complaint claims that Defendants, without specificity as to which Defendants, tortiously interfered with Plaintiffs' business expectations in violation of Virginia law. Defendants Costech, Raglione, Skulmoski, and Letovsky move for dismissal of Count II under Rule 12(b)(6). Defendants argue that Wigand and VADETS have failed to state a claim for which relief could be afforded under Virginia law and that the tortious interference claim is preempted by federal copyright law. The Court agrees in both instances.

The elements required for a *prima facie* showing of tortious interference with a business expectancy are: (1) the existence of a valid contractual relationship or business

14

expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor;

(3) intentional interference inducing or causing a breach or termination of the relationship

or expectancy; and (4) resultant damage to the party whose relationship or expectancy has

been disrupted. *Rappahannock Pistol & Rifle Club, Inc. v. Bennett*, 262 Va. 5, 12, 546

S.E.2d 440, 443 (2001). Plaintiffs merely mirror the statutory allegation in their

Complaint, stating that Wigand had valid business expectancies between herself and her

potential clients, Defendants knew of the existence of the valid business expectations,

Defendants intentionally interfered with those business expectations, and Wigand did not

realize her business expectations as a result of this intentional interference.

Conspicuously absent is any designation of the specific nature of those business

opportunities.

Plaintiffs' Complaint alleges that Costech misappropriated Plaintiffs' materials

and marketed them in North Carolina. However, there is no indication that Wigand

herself made even a cursory attempt to market her materials in North Carolina, let alone

that she had cultivated any business prospects there. Plaintiffs state that Costech markets

its products in North Carolina with the aid of Thomas Langdon and Duffey Agency, and

through Lorraine Jordan Langdon and JDS. But again, there is no allegation that any

party besides Costech knew that the materials utilized in the North Carolina course were

allegedly misappropriated. Wigand and VADETS fail to allege any valid business

expectancy in North Carolina lost as a direct result of Defendants' purported interference.

Plaintiffs also detail events in Georgia in the section of the Complaint headed "Factual Basis of Claims." According to the Complaint, Wigand contracted with Costech in 2003 to market a driver's education course in Georgia. Plaintiffs further contend that Costech still markets a VADETS driver's education course to 16 schools in Georgia, well after the termination of the Costech-VADETS/Wigand relationship in late 2006. Lacking, however, is any specific factual allegation, as required by statute, that Costech knew of a legitimate business expectation possessed by Plaintiffs in Georgia and then deliberately interfered with that expectation resulting in the loss of business.

At this stage of the litigation the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff." *Martin*, 980 F.2d at 952. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In essence, Count II is a patchwork quilt of legal conclusions that is insufficient to serve as a basis for relief under Virginia law.

Costech and its fellow Defendants are also correct that Count II is preempted by federal copyright law. Section 301(a) of the Copyright Act states that:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Copyright Act] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title.

17 U.S.C. § 301(a). Works are "within the subject matter of copyright" if they are

16

"original works of authorship fixed in [a] tangible medium of expression . . . from which

they can be perceived, reproduced, or otherwise communicated, either directly or with the

aid of a machine or device." 17 U.S.C. § 102(a).

Since all parties agree that the Wigand and VADETS materials are within the

subject matter of copyright, it must be determined whether the Copyright Act preempts

Plaintiffs' claim of tortious interference under state law. A copyright owner has exclusive

rights to "(1) reproduce the copyrighted work; (2) prepare derivative works; (3) distribute

copies of the work by sale or otherwise; and with respect to certain artistic works; (4)

perform the work publicly; and (5) display the work publicly." *Rosciszewski v. Arete

Assoc.,* 1 F.3d 225, 229 (4th Cir. 1993); 17 U.S.C. § 106.

Section 301 preempts state law claims when the subject state law "may be

abridged by an act which, in and of itself, would infringe one of the exclusive rights"

afforded in § 106 of the Copyright Act. *Rosciszewski,* 1 F.3d at 229. Courts in this

Circuit conduct a comparison of the elements of the state cause of action and the rights

afforded in § 106 to ascertain whether preemption is appropriate. *Id.* To avoid

preemption, the state cause of action must contain an extra element in addition to or

instead of those articulated in § 106. *Id.* at 229-30. However, the additional element in

the state cause of action must make the nature of the state action "qualitatively" different

from the copyright infringement. *Id.* That is to say a plaintiff cannot prevail on a state

law claim if that claim boils down to nothing more than an assertion that the defendant

17

copied plaintiff's copyrighted materials.

The Second Circuit has held, and the Fourth Circuit has agreed in an unpublished decision, that a tortious interference claim may require proof of knowledge and intentional interference not required by a federal copyright claim, but that does not qualitatively distinguish the two actions such that preemption is avoided.[4] *Harper & Row Publishers, Inc. v. Nation Enter.*, 723 F.2d 195, 201 (2d Cir. 1983). When applied to the facts alleged by Wigand and VADETS, it is clear that preemption is appropriate. The alleged tortious interference by Defendants was merely the misappropriation of the materials, and that claim is part and parcel of the copyright infringement claim. Accordingly, the claim contained in Count II is preempted by federal copyright law and will be dismissed.

**D.    Conspiracy to Injure in Reputation, Trade, and Business (Count III)**

Wigand and VADETS assert in Count III that Defendants, again without further specificity, have maliciously conspired together to injure the plaintiffs' business reputation. *See* Va. Code Ann. § 18.2-499 *et seq.* Costech, Raglione, Skulmoski, and Letovsky move for dismissal of Count III. These defendants believe that Count III, as pled, fails to state a claim for which relief could be awarded and is preempted by the

---

[4]As discussed above, tortious interference with business expectancy in Virginia requires proof of four elements: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Rappahannock Pistol & Rifle Club*, 262 Va. at 12, 546 S.E.2d at 443.

Copyright Act.

"Any two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever" is subject to criminal liability by Va. Code § 18.2-499.  The code section that follows imposes civil liability for the same conduct.  Va. Code Ann. § 18.2-500.  These claims enjoy a heightened pleading standard.  "[T]o survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than mere conclusory language." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (citing *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985)).  Simple conclusory statements contained in a complaint are not sufficient to sustain a cause of action no matter how vicious the alleged conspiracy. *See Connor v. Real Title Corp.*, 165 F.2d 291, 294 (4th Cir. 1947).

Plaintiffs have not met this heightened standard.  Wigand and VADETS have not identified which Defendants conspired to harm their business interests.  Moreover, they have neither articulated when nor where these Defendants reached any form of tacit understanding, much less the means of carrying out the alleged objectives.  "There can be no conspiracy without an agreement," *Floyd v. Commonwealth*, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978), and the Court finds a dearth of factual allegations in the Complaint to support the notion that any of the defendants formed even a loose

association with the purpose of maliciously harming Plaintiffs' business interests as the

Virginia statute requires. Count III will therefore be dismissed. Given the clear

inapplicability of § 18.2-500, the Court need not reach the issue of copyright preemption.

**E.     Common Law Fraud (Count IV)**

Plaintiffs assert that unspecified Defendants made two misrepresentations that

amount to common law fraud in Virginia. The first statement is that Defendants would

provide "a complete, user-friendly [computer] System." The second alleged

misrepresentation was that Defendants "would not improperly use the Materials"

provided by Plaintiffs. Although it is unclear, the Court assumes that these

representations were made by Costech or its officers and were contained in contracts

between Costech and Plaintiffs, or were made as part of contract negotiations or

performance. Defendants Costech, Raglione, Skulmoski, and Letovsky move for

dismissal of this count under Rule 12(b)(6).

The Complaint describes in multiple places the disappointment suffered by

Plaintiffs because the computer products provided by Costech were, in their view, not

"user-friendly" or "easy to use." However, mere puffing or sales talk cannot serve as the

basis for a fraud claim in Virginia. *Tate v. Colony House Builders*, 257 Va. 78, 84, 508

S.E.2d 597, 600 (1999) (holding that "commendatory statements, trade talk, or puffing,

do not constitute fraud"). Such language is no more actionable than a frustrated

consumer contending that he was promised, or sold, products that would be "easy to

20

assemble" or "the best deal in town." Further, the fraud claim violates the Virginia economic loss rule because it seeks tort damages for duties that arose solely out of contract. *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004) ("[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts.").

Plaintiffs' alternate fraud claim, based on Defendants allegedly misrepresenting that they would not misappropriate Plaintiffs' materials, must also be dismissed because it is preempted by the Copyright Act. As discussed earlier, federal copyright law preempts a state claim when the rights afforded by state law do not qualitatively differ from the rights enumerated in the Copyright Act. *Rosciszewski*, 1 F.3d at 229; 17 U.S.C. § 106. In this instance, Plaintiffs' essential grievance is that Costech misappropriated their materials after saying they would not. Consequently, it is preempted by the Copyright Act.

### F.   Breach of Contract (Count V)

Turning next to Plaintiffs' breach of contract claim, they contend that Costech and VADETS entered into a contract, and thereafter "Costech, in blatant disregard of the contract, breached this contract by stealing and misappropriating VADETS' property for their own commercial use." Costech, Raglione, Skulmoski, and Letovsky move for dismissal of this count on the ground that it is preempted by the Copyright Act. The Court agrees.

21

The same analytical framework employed above applies with respect to the breach of contract claim. No rights are asserted in Count V that qualitatively differ from the rights provided in the Copyright Act. *Rosciszewski*, 1 F.3d at 229; 17 U.S.C. § 106. A breach of contract claim will survive preemption only when the cause of action is based upon provisions of the contract that do not arise out of the subject matter of copyright. *Acorn Structures, Inc. v. Am. Inst. of Architects*, 846 F.2d 923, 926 (4th Cir. 1988). The essential claim in this count is that Costech misappropriated Plaintiffs' materials. That misappropriation may have incidentally breached a contract between the parties, but § 301 of the Copyright Act makes it clear that Plaintiffs' only recourse is under federal law. Count V will be dismissed.

## G.   Breach of Express Warranty under Virginia UCITA (Count VI)

Count VI of the Complaint asks the Court to find that Costech's failure to deliver a "user-friendly" computer product breached an express warranty in violation of the Virginia Uniform Computer Information Transactions Act (UCITA), Va. Code Ann. § 59.1-501.1 *et seq*. The motion by Costech and its officers to dismiss this claim will be granted because no express warranty exists under UCITA and, even if it did, the statute of limitations for this claim has lapsed.

UCITA grants the licensee of a computer product an express warranty for any "affirmation of fact or promise made" by the licensor that becomes part of the "basis of the bargain." Va. Code Ann. § 59.1-504.2(a)(1). "However, an express warranty is not

22

created by . . . a statement purporting to be merely opinion or commendation of the information or informational rights." Va. Code Ann. § 59.1-504.2(b)(3). Plaintiffs contend that the promise of a "user-friendly" computer system was part of the basis of the bargain and created an express warranty. The commentary to UCITA makes clear that courts should "draw on extensive case law distinguishing express warranties from puffing and from other unenforceable statements, representations, or promises" when determining whether a statement creates an express warranty under the statute. Official Comment, Va. Code Ann. § 59.1-504.2(b).

The issue, as framed by the Official Comment, "is whether statements of the licensor to the licensee have in the circumstances and in objective judgment become part of the basic deal." *Id.* The Court finds that a guarantee by Costech that the product would be "user-friendly" or "easy to use" did not create an express warranty. These statements were puffing, or sales talk, and did not form a legitimate basis of the bargain. In drawing this conclusion, the Court looks to a substantial body of Virginia case law, such as *Tate*, 257 Va. at 84, that holds puffing is not actionable, as well as the common sense notion that whether a given computer program is "user-friendly" is so subjective as to be nearly indeterminable by the Court.

Additionally, assuming *arguendo* that an explicit warranty was created by Costech's statements, the statute of limitations for breach of warranty has lapsed. UCITA provides a four-year statute of limitations from the date the action accrues. Va. Code

23

Ann. § 59.1-508.5(a). The action accrues when access to the computer information or program occurs. Va. Code Ann. § 59.1-508.5(c). Plaintiffs' Complaint indicates that the purportedly actionable statements regarding ease of use were made by Costech at the time of contracting in September 2002. The program was in use by Plaintiffs as of November 2002. Plaintiffs had until November 2006 to bring this action, but instead delayed until July 2007. Accordingly, this claim is time-barred and Count VI will be dismissed.

**H.    Breach of Implied Warranty under Virginia UCITA (Count VII)**

The next front in Plaintiffs' multi-layered assault on Costech and its officers is a claim that Costech breached an implied warranty of fitness for a particular purpose. *See* Va. Code Ann. § 59.1-504.5(b)(1). As best as the Court can determine from the pleadings, Plaintiffs believe that they conveyed their requirements for a computer-based driver education program to Costech, creating an implied warranty of fitness for a particular purpose that was breached by Costech when it delivered a product that was not easy to use. The Court finds, for the reasons laid out in Subsection G above, that no implied warranty was created by the events alleged by Plaintiffs, and the action is further barred by the applicable statute of limitations.

**I.    Breach of Implied Warranty of Merchantability under Virginia UCITA (Count VIII)**

Wigand and VADETS's next theory of recovery involves labeling Costech's acts as a breach of an implied warranty of merchantability. UCITA does require goods to be fit for their ordinary use, but provides a cause of action only to the product's "end user."

24

Va. Code Ann. § 59.1-504.39(a)(1).  In transactions between supplier and distributor, however, UCITA only provides a warranty for the packaging and labeling of a computer product.  Va. Code Ann. § 59.1-504.3(a)(2)(A).  Plaintiffs concede in their reply brief that they have misconstrued the statute and are not entitled to the relief requested.  Count VIII will be dismissed.

## J.      Violation of the Consumer Protection Act (Count IX)

The final count in Plaintiffs' Complaint alleges that Defendants engaged in a deceptive practice in connection with a consumer transaction as prohibited by Va. Code Ann. § 59.1-204.  The basis of this claim is the same statement that forms the centerpiece of Wigand and VADETS's state law claims, namely that Costech promised to deliver a user-friendly system but did not carry out this promise.  Plaintiffs' reliance on the Virginia Consumer Protection Act ("VCPA") fails on at least two grounds.

The VCPA forbids "using any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."  Va. Code Ann. § 59.1-204.  The statute defines a consumer transaction as a sale of goods or services "to be used primarily for personal, family, or household purposes."  Va. Code Ann. § 59.1-198. Plaintiffs attempt to invoke the statute in a transaction that is decidedly not of a consumer nature, but rather a commercial contract between two sophisticated entities.  Additionally, as the Court has exhaustively discussed above, the Costech statements were, as a matter of law, mere puffing.  Plaintiffs cannot recover for them as misrepresentations under the

25

VCPA any more than under their theory of common law fraud or implied and explicit warranties. This claim fails for the same reason.

## IV. Conclusion

For the reasons stated above, Defendants' motions to dismiss are granted. The copyright infringement claim against Defendants Costech, Raglione, and Skulmoski survives. An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____

Henry E. Hudson
United States District Judge

Date: Jan. 4 2008
Richmond, VA

26